LADEW et al. v. TENNESSEE COPPER CO. et al.

(Circuit Court, S. D. Tennessee, E. D. February 15, 1910.)

No. 1,012.

1. DISMISSAL AND NONSUIT (§ 55*)—FEDERAL COURTS—DETERMINATION OF QUESTION OF JURISDICTION.

Want of jurisdiction of a federal court, apparent on the face of a bill, may be taken advantage of by a motion to dismiss.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. § 116; Dec. Dig. § 55.*]

2. COURTS (§ 269*)—JURISDICTION OF FEDERAL COURTS—LOCAL ACTIONS.

When the requisite diversity of citizenship between the parties exists to give a federal court jurisdiction, a suit to establish a lien or claim on property within the provisions of section 8 of the judiciary act (Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513]), may be maintained in the district where the property is situated although neither the plaintiff nor defendant is a resident of such district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

3. COURTS (§ 269*)—JURISDICTION OF FEDERAL COURTS—LOCAL ACTIONS.

Section 8 of the federal judiciary act (Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513]), which authorizes suits "to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property" to be brought in the district where the property is situated, does not extend to all suits of a local nature nor to all local actions in rem but is definitely limited to suits brought to enforce the rights specified, and cannot be extended beyond them by construction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

4. COURTS (§ 269*)—JURISDICTION OF FEDERAL COURTS—CONSTRUCTION OF STATUTE—"CLAIM TO PROPERTY."

The words "claim to * * * property" as used in section 8 of the judiciary act (Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513]), authorizing suits to enforce such claims to be brought in the district where the property is situated, relate only to claims made to the property in the nature of an assertion of ownership or proprietary interest or other direct right or claim to the property itself, and do not include a suit which merely seeks to enforce a restriction which the law imposes upon the owner of the property in reference to its proper use to avoid injury to other property, as one to abate or enjoin a nuisance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

5. STATUTES (§§ 174, 175*)—RULES OF CONSTRUCTION.

The construction and interpretation of statutes cannot extend to amendment or legislation, nor can considerations of apparent hardship justify a strained construction of the law as written.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 254; Dec. Dig. §§ 174, 175.*]

6. COURTS (§ 269*)—FEDERAL COURTS—SUITS FOR ABATEMENT OR INJUNCTION—VENUE.

While an action to abate or restrain a nuisance is of a local nature, and can only be maintained in a court having the proper territorial juris-

diction, the venue of such action is in the district where the nuisance itself is located.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269.*]

7. NUISANCE (§ 84*)—SUITS TO ENJOIN—PARTIES.

In a suit to abate or restrain a nuisance, as distinguished from an action for damages, all persons maintaining structures or carrying on operations, whose effect mingles and combines in contributing to the injury to the plaintiff's property, may properly be joined as defendants, although each transacts his own business separately and independently from the others.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 84.*]

8. COURTS (§ 318*)—JURISDICTION OF FEDERAL COURTS—EFFECT OF DISMISSAL AS TO ONE DEFENDANT.

The dismissal without prejudice of a suit in a federal court as to one of several defendants who might be sued either separately or jointly, either on his objection to the local jurisdiction on the ground that neither he nor plaintiff is a resident of the district, or on the ground that he and plaintiff are both residents of the same state, where he is not an indispensable party, does not necessitate a dismissal as to other defendants properly before the court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 863; Dec. Dig. § 318.*]

9. COURTS (§ 307*)—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST CITIZEN AND ALIEN.

A suit brought by a citizen of one state against a citizen of another state and an alien, as defendants, involving the requisite jurisdictional amount, is within the jurisdiction of a Circuit Court of the United States.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 307.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

In Equity. Suit by J. Harvey Ladew and others against the Tennessee Copper Company and the Ducktown Sulphur, Copper & Iron Company, Limited. On separate motions by defendants to dismiss. Sustained as to the Tennessee Copper Company, and overruled as to the Ducktown Sulphur, Copper & Iron Company, Limited.

Chas. Seymour, for complainants.

Cornick, Wright & Frantz and W. B. Miller, for defendants.

SANFORD, District Judge. This bill was filed by the complainants, citizens and residents of the states of New York and West Virginia, against the Tennessee Copper Company, a corporation of the state of New Jersey, and the Ducktown Sulphur, Copper & Iron Company, Limited, a corporation of the kingdom of Great Britain, each having its main office and business in Polk county, Tenn., within this judicial district.

The bill alleges that the complainants are the joint owners of certain tracts of forest lands and timber rights in the state of Georgia containing altogether 24,000 acres, and timber aggregating in value many thousands of dollars; that the defendants are engaged in mining, and manufacturing sulphur and copper ores in Polk county,

Tenn., near the Georgia state line, within a short distance of complainants' property, and have erected and are operating furnaces, smelters, and ovens for roasting and reducing such ores, in close proximity to one another, upon lands in Polk county, Tenn., owned or leased by them, respectively; that, "by reason of their ownership of the lands and forests aforesaid," complainants "both in law and equity are possessed of a right and claim in, to, and against the lands and tenements of the defendants in the nature of an easement thereupon that same shall not be used in a manner to injure or destroy the said lands and forests of your orators adjacent thereto as aforesaid"; that the defendants by means of said furnaces, smelters, and ovens, and in other ways generate vast quantities of smoke and fumes which inextricably mingle a short distance from their works and are together discharged upon complainants' lands and forests, and have destroyed much of complainants' forests and inflicted great damage; that the zone of destruction is constantly increasing, and the defendants' operations, if permitted to continue, will destroy all of complainants' forests and timber, and all other forms of plant and tree life, and render their lands barren, unfit for occupation, and valueless; that it is impossible to calculate or approximate the damage threatened, and the complainants are without remedy in a court of law, and unless relief is granted, will suffer irreparable injury; and that "an injunction to prevent the perpetration of said wrongs is the only adequate relief that complainants can secure." And "to the end that" the aforesaid right and claim of complainants to and upon the properties of the defendants, that the same shall not be used in a manner to destroy or injure the lands and forests of complainants, may be declared and enforced, and that the nuisance maintained upon said properties may be abated by and under the direction of the court, through its own officers or otherwise, and that such changes be made by and under its direction in and to the defendants' properties as shall prevent the discharge therefrom upon complainants' lands and forests of the aforesaid deleterious substances, and that the defendants may be restrained by injunction from doing or causing the acts complained of, or their continuance, the complainants pray that writs of injunction be granted restraining and enjoining the defendants, their officers, agents, and servants, from maintaining or operating upon their premises any oven, furnace, or appliance giving forth any of the smoke and fumes complained of, or otherwise producing or causing any noxious or injurious smoke or fumes upon the complainants' lands, and commanding them to desist and refrain from using, maintaining, or operating, any furnace or other appliance or copper reducing method giving off or discharging any noxious smoke or fumes upon the complainants' lands; and they further pray for general relief.

By an amendment to the bill, made by leave of the court, complainants further allege that the properties and operations of each defendant constituting the nuisance sought to be abated are of greater value than $5,000; that the injury which will be done to complainants' lands by each of the defendants unless the nuisance is abated, exceeds in value $5,000; and that the matter in controversy exclusive of interest and cost exceeds $5,000. Subpœnas to answer were issued, as

prayed in the bill, and served upon the highest officer of each of the defendants to be found within this district.

### Motion of the Tennessee Copper Company.

The Tennessee Copper Company, having entered a special appearance for the sole purpose of objecting to the jurisdiction of the court, moved to dismiss the bill on the ground that as it appears upon its face that the complainants are citizens and residents of New York and West Virginia, and said defendant a citizen and resident of New Jersey, and that neither the complainants nor said defendant are citizens or residents of the Eastern District of Tennessee, this court has no jurisdiction.

It is well settled that a want of jurisdiction apparent on the face of the bill may be taken advantage of by motion to dismiss. Coal Company v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Central Trust Co. v. McGeorge, 151 U. S. 129, 132, 14 Sup. Ct. 286, 38 L. Ed. 98; Connor v. Vicksburg & M. R. Co. (C. C.) 36 Fed. 273, 1 L. R. A. 331; Municipal Inv. Co. v. Gardiner (C. C.) 62 Fed. 954; Stichtenoth v. Central Exchange (C. C.) 99 Fed. 1.

It is also clear, as is conceded by the complainants, that as Act March 3, 1875, c. 137, § 1, 18 Stat. 470, as amended by Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), provides that when the jurisdiction of the Circuit Court is founded only on the fact that the parties are citizens of different states, suit shall be brought only in the district where either the plaintiff or defendant resides, and as neither the complainants nor the Tennessee Copper Company, a New Jersey corporation, are residents of this district, if jurisdiction of this case depends upon diverse citizenship alone the Circuit Court of this particular district is without jurisdiction, and such want of local jurisdiction not having been waived by said defendant, the suit as to it must be dismissed. Shaw v. Quincy Min. Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942; In re Keasbey & Mattison Co., 160 U. S. 221, 16 Sup. Ct. 273, 40 L. Ed. 402; Western Loan Co. v. Mining Co., 211 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

The complainants contend, however, that jurisdiction of this suit does not depend upon diverse citizenship alone, but that it is an action relating to property which may be brought against said defendant in this district under Act March 3, 1875, c. 137, § 8, 18 Stat. 472, which provides that "when in any suit commenced in any Circuit Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real and personal property within the district where such suit is brought," any of the defendants shall not be an inhabitant of, or found within said district, or voluntarily appear, an order directing such absent defendant to appear and make defense may be served on him personally, wherever found, or when this is impracticable, by publication, and that in default of such appearance, the court may "entertain jurisdiction, and proceed to the hearing and adjudication of such suit; * * * but said adjudication shall, as regards said absent defendant

\* \* \* without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

This section of the Act of 1875 was not repealed by the Act of 1888, and remains in full force. Mellen v. Moline Wks., 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178; Jellenik v. Huron Copper Co., 177 U. S. 1, 10, 20 Sup. Ct. 559, 44 L. Ed. 647; Citizens' Saving Co. v. Ill. C. R. Co., 205 U. S. 46, 54, 27 Sup. Ct. 425, 51 L. Ed. 703. And when the requisite diversity of citizenship exists to give the Circuit Court jurisdiction, a suit embraced within the provisions of this section may be brought within the district in which the property is situated, although neither the plaintiff nor defendant is a resident of such district. Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69; Citizens' Saving Co. v. Ill. C. R. Co., supra; Single v. Paper Mfg. Co. (C. C.) 55 Fed. 553; Spencer v. Stockyards Co. (C. C.) 56 Fed. 741.

The present suit does not, however, in my opinion come within the provisions of section 8 of the act of 1875.

First. It clearly cannot be held to be within the provisions of this section under the broad theory upon which complainants rely that it is purely a local action in rem to abate a nuisance, wherein relief may be given without a judgment in personam against the defendants, through process of the court, executed by its officers and operating directly on the res, and hence as such local action in rem is necessarily included within the provisions of said section 8.

In the first place, as the bill does not allege that either of the plants of the defendants, or any particular structures or appliances therein, constitutes a nuisance per se, which should be abated or destroyed under process of the court, but, in effect, merely complains generally of an unlawful use of the defendants' properties by methods of operating their plants, which generate and diffuse noxious fumes and smoke over the complainants' properties, and, while it contains an incidental reference to an abatement of the nuisance by officers of the court, on the other hand avers specifically that an injunction to prevent the perpetration of the wrongs is the only adequate relief that complainants can secure, and prays for no specific relief other than an injunction operating upon the defendants in personam and restraining them from an improper use of their property, the suit, evidently, is not, under the pleadings, purely an action in rem to abate a nuisance, but is, on the contrary, primarily and essentially an action to restrain a nuisance by injunctive relief operating in personam upon the defendants. Thus considered, it would follow that if the doctrine of York County Savings Bank v. Abbot (C. C.) 139 Fed. 988, 994, a case upon which complainants rely, that no jurisdiction is conferred upon the Circuit Court under section 8 of the act of 1875 in an action where complete relief cannot be given according to the terms of the bill without a judgment in personam against an absent defendant, be correct, the court would clearly be without jurisdiction of the case.

And, if jurisdiction under section 8 of the act depended upon whether the proceedings were essentially in rem or in personam, it might well be doubted whether the specific prayer for injunctive relief

against the defendants could be disregarded, and the bill treated for jurisdictional purposes, under its broad averments and prayer for general relief, as merely one to abate a nuisance by process operating in rem as distinguished from a suit to restrain the nuisance by process in personam. See Mississippi & M. R. Co. v. Ward, 2 Black, 485, 17 L. Ed. 311; Van Bergen v. Van Bergen, 2 Johns. Ch. (N. Y.) 272; Carlisle v. Cooper, 18 N. J. Eq. 241; Ramsay v. Chandler, 3 Cal. 90; Lassater v. Garrett, 4 Baxt. (Tenn.) 369; 1 Am. & Eng. Enc. of Law (2d Ed.) 64; 29 Cyc. 1209, 1252; 14 Enc. Pl. & Pr. 1146, 1147.

It is, however, unnecessary to determine this question, since even if the suit could thus be considered, in the aspect both favorable to the defendants, as an action to abate a nuisance under direct process of the court, and.hence as purely a local action in rem or in the nature of a proceeding in rem this would not suffice to bring it within the provisions of section 8 of the act of 1875.

It is clear that this section does not extend either to all suits of a local nature or to all local actions in rem or in the nature of proceedings in rem, but is definitely limited to suits brought for the enforcement of certain specific rights. The suits which it includes are not described by reference to their general character, but by reference to their object. It contains no general descriptive phrase such as "suits of a local nature," used in sections 741 and 742, Rev. St. (U. S. Comp. St. 1901, p. 588), in regard to suits brought in a state having more than one judicial district, or "proceedings in rem" or other like phrase; on the contrary it definitely enumerates the suits to which it relates, namely, those brought "to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon, the title to real or personal property." In view of this specific enumeration of the suits to which it relates, and the absence of any general phrase extending its provisions to any other action, local or otherwise, its scope cannot be extended by any process of construction, there being nothing in its language upon which such extension can be based.

Where a "statute specifies certain classes of cases which may be brought against nonresidents, such specification, doubtless, operates as a restriction and limitation upon the power of the court." Roller v. Holly, 176 U. S. 398, 406, 20 Sup. Ct. 410, 413 (44 L. Ed. 520).

Second. The question then arises whether, as the complainants further contend, this suit comes within the specific provisions of section 8 of the act of 1875, as a suit brought to enforce a "claim to * * * property" of the defendants, within the meaning of this section, there being obviously no other class of suits enumerated in this section in which it can be included.

The suit clearly does not come within this provision merely because the complainants allege in their bill that by reason of the ownership of their lands they are "possessed of a right and claim in, to, and against the lands and tenements of the defendants in the nature of an easement thereupon," this being the mere assertion of the legal conclusion which the complainants seek to draw from the fact of their ownership of the lands in Georgia; and it cannot be. held to come within this provision unless, upon the facts alleged in the bill, the complainants are seeking to enforce a right which, within the meaning of

the act, may properly be termed a "claim to property" within this district.

The theory of the complainants is, that attached to all property is a claim, based upon natural right, held by those who occupy any relation with respect thereto, that it shall not be used in such way as to injure or damage such other persons; and that the duty under which the defendants' property rests creates in favor of the complainants a right to and a claim against such property, which "may be called a negative right or easement upon land based upon the maxim of sic utere tuo ut alienum non lædas," and is the basis of the present action.

There appears to be no direct adjudication upon the question whether a claim of this character may be properly considered a claim to property within the meaning of the statute. The statement in Shainwald v. Lewis (D. C.) 5 Fed. 310, 317, that by the words "legal or equitable lien or claim against real or personal property" Congress "intended to reach every case in which there should be any sort of charge upon a specific piece of property, capable of being enforced by a court of equity" which is cited in 1 Rose's Code, Fed. Pro. § 856, note C, as authority for a similar statement, was purely obiter; the only point involved in the case being that Rev. St. § 738, in which these words originally occurred, did not apply to a suit in which the plaintiff sought to subject the general property of the defendant to the payment of its debts, but only to suits to enforce some pre-existing lien or claim upon a specific piece of property. Neither is the question controlled by the definition of the word "claim" given by Mr. Justice Story in Prigg v. Pennsylvania, 16 Pet. 536, 615, 10 L. Ed. 1060, as "a demand of some matter as of right, made by one person upon another, to do or forbear to do some act or thing as a matter of duty," this definition being given in a case involving the construction of a statute providing that slaves should be delivered up "on claim of the party" to whom their service was due; the meaning of the word "claim" as used in a statute of this character in reference to the "claim of" one person upon another to do a certain thing, being manifestly different from its meaning as used in the act of 1875 in reference to the claim of one person "to" the property of another. Evidently its meaning as used in the act of 1875 in the phrase a "claim to * * * property" is much more nearly expressed by the next definition cited by Mr. Justice Story in this same opinion, as given by Lord Dyer in Stowel v. Zouch, 1 Plowd. 359, that:

"A claim is a challenge by a man of the propriety or ownership of a thing, which he has not in possession, but which is wrongfully detained from him."

On the whole, I am of the opinion that as it appears from the concluding portion of this section that it relates entirely to suits of which property is the "subject," and as the words "claim to * * * property" are evidently used in contrast to liens or incumbrances upon property and are the only words in the section under which a claim to the direct ownership of property may be included, these words relate only to claims made to the property in the nature of an assertion of ownership or proprietary interest, or other direct right or claim to the property itself, such, for example, as the claim of ownership

of an undivided interest in the property upon which a suit for partition may be based (Greely v. Lowe, 155 U. S. 58–74, 15 Sup. Ct. 24, 39 L. Ed. 69), and do not include the assertion of a right which is not based upon an interest in the property itself, but seeks merely to enforce a restriction which the law imposes upon the owner of the property in reference to its proper use; and, therefore, that a bill to abate or restrain a nuisance is not a suit to enforce a claim to the defendants' property within the meaning of the statute.

"A nuisance is literally an annoyance and signifies in law such a use of property or such a course of conduct as * * * transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom." 21 Am. & Eng. Enc. of Law (2d Ed.) 682.

The right to have a nuisance on another's property restrained or abated is not based upon an assertion of title to such property, or of any proprietary interest therein, or right or claim to the property itself, but is, on the contrary, based solely upon the breach of a personal duty which the owner of the property owes to his neighbor in its management and use; a breach of duty which may be punished by indictment where the nuisance is of a public character, and which renders the offender personally liable in damages to the injured neighbor. And therefore the assertion by the neighbor of his right to have the nuisance restrained or abated, being based on the personal wrong and breach of duty on the part of the owner, and seeking merely to enforce the just restrictions which the law imposes upon him in the use of his property and prevent misuse, cannot, in my opinion, be regarded in any just sense as the assertion on the part of the neighbor of a claim to the property itself within the meaning of the statute.

Nor can this result be changed by reason of the fact that as a suit for the abatement of a nuisance is a local action which can only be brought in the district where the nuisance is located (Mississippi & M. R. R. Co. v. Ward, supra), in such a suit between citizens of different states, where neither of the parties reside in the district where the nuisance is located, the action not being maintainable under section 8 of the act of 1875, there is no jurisdiction in any Circuit Court of the United States except upon a waiver by the defendant of the want of jurisdiction in the particular district.

The construction and interpretation of statutes cannot extend to amendment or legislation. U. S. v. Fisk, 3 Wall. 445, 448, 18 L. Ed. 243; Petri v. Creelman Lumber Co., 199 U. S. 487, 495, 26 Sup. Ct. 133, 50 L. Ed. 281. Nor can considerations of apparent hardship justify a strained construction of the law as written. Jos. Schlitz. Brewing Co. v. U. S., 181 U. S. 584, 589, 21 Sup. Ct. 740, 45 L. Ed. 1013; St. Louis, I. M. & S. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061. "The remedy," if any be required, "is in Congress." Ex parte Girard, 3 Wall. Jr. 263, 10 Fed. Cas. 436, Fed. Cas. No. 5,457.

Furthermore the complainants are not on that account remediless, since in this case, as well as in the many other controversies between citizens of different states which Congress has not deemed proper to include within the jurisdiction of the Circuit Courts of the United

States, the parties may always rely for the enforcement of their rights upon the state courts having the necessary local jurisdiction.

It results, therefore, that the motion of the Tennessee Copper Company must be granted and the bill dismissed as to it, for want of jurisdiction over the person of the defendant, but without prejudice. Macon Grocery Company v. Atlantic C. L. R. Co. (U. S. Sup. Ct., January 17, 1910) 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. ——; York County Savings Bank v. Abbot (C. C.) 139 Fed. 988.

### Motion of the Ducktown Sulphur, Copper & Iron Company.

The Ducktown Sulphur, Copper & Iron Co., hereinafter called the Ducktown Company, having also entered a special appearance, moved to dismiss the complainants' bill, for want of jurisdiction and misjoinder of the parties defendant.

It is well settled, and is not disputed, that the requirement of section 1 of the Acts of 1875, as amended by the Acts of 1888, that suits in a Circuit Court based upon diverse citizenship alone shall be brought within a district in which either the plaintiff or the defendant resides, has no application to suits brought against aliens, and that if jurisdiction otherwise exists in the Circuit Court, an alien corporation may be sued in any district in which valid service may be made upon it. In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211; Barrow Steamship Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.

The Ducktown Company urges, however, that there is nevertheless a want of jurisdiction in this court and misjoinder of the defendants upon various grounds set forth in its motion to dismiss. None of these grounds are, however, in my opinion, well taken.

1. The fact that this bill is filed for the purpose of abating or restraining a nuisance affecting lands which lie wholly in the state of Georgia, does not require the action to be brought in the district where the injured property lies, and thereby deprive this court of jurisdiction of the subject-matter of the suit. While an action to abate or restrain a nuisance is of a local nature and can only be maintained in a district having the proper territorial jurisdiction, the venue of such action is in the district where the nuisance itself is located. 29 Cyc. 1237; 14 Enc. Pl. & Pr. 1106, and cases cited.

In Mississippi & M. R. R. Co. v. Ward, 2 Black, 485, 495, 17 L. Ed. 311, it was held, under a bill filed by a steamboat owner in the district court of Iowa to abate a bridge across the Mississippi river constituting an obstruction to navigation, that as to so much of the bridge as lay beyond the middle of the river and outside of the district of Iowa the court "had no power over the local object inflicting the injury" and was without jurisdiction. And in Horne v. City of Buffalo, 49 Hun, 76, 1 N. Y. Supp. 801, it was held, under a statute providing that certain actions, including those for a nuisance, must be tried in the county where the cause of action, or some part thereof, arose, that a suit against a city to abate a nuisance caused by the dumping of street sweepings and other foul matter into the river in the county where the city was located, which injured residents in a village below in another county, should be tried in the county in which the dumping was done,

as being the county in which the cause of action arose. In this case the court said:

"By the common law an action for a nuisance is regarded as local in its nature, and the venue is required to be laid in the county where the nuisance is situated."

It was also held in People v. St. Louis, 10 Ill. 352, 48 Am. Dec. 339, and Morris v. Remington, 1 Pars. Eq. Cas. (Pa.) 387, that the venue under a bill to restrain a nuisance by injunction is in the jurisdiction in which the nuisance is located; a result which would also seem to follow from the doctrine of Northern Ind. R. R. Co. v. Michigan Central R. R. Co., 15 How. 232, 242, 14 L. Ed. 674, that wherever the subject-matter of a controversy is local, no jurisdiction attaches to a Circuit Court beyond the limit of the district in which the property is situated, and no injunction can be granted affecting such property, except in cases of contract, fraud, or trust, where relief may be given by a decree in personam.

While none of these cases, except the Horne Case, presented the precise situation in the present case, where the property constituting the nuisance lies in one district and the injured property in another, the reasoning in the Ward Case that, where the court "had no power over the local object inflicting the injury," its abatement was beyond the jurisdiction of the court, shows conclusively that the test of local jurisdiction in an action to abate a nuisance is the situs of the object inflicting the injury and not that of the object injured.

The various cases which hold that an action of tort seeking merely to recover damages caused by a nuisance will lie in the jurisdiction where the injury is inflicted, although the object from which the injury proceeds is located elsewhere—there being, however, much conflict of authority even on this point, as shown by the cases collated in 14 Enc. Pl. & Pr. 1106, notes 2 and 3—clearly involve an entirely different question from that in reference to the venue of an action to abate the nuisance itself. The "power over the local object inflicting the injury," which is requisite in an action to abate the nuisance, is wholly unnecessary in an action merely to recover damages, whose result cannot in any way affect the maintenance of the nuisance itself; and the cases holding that in an action of tort for damages alone the venue should be laid where the injured object is located, may, it seems, be well sustained by analogy to the rule stated in Northern Ind. R. R. Co. v. Michigan Cent. R. R. Co., supra, that an action of trespass quare clausum fregit cannot be prosecuted where the act complained of was not done in the district.

2. The fact that, so far as the bill shows, the defendants are separate and independent concerns, conducting each its own separate affairs, does not prevent the bringing of a joint action against them, or create a misjoinder of the Ducktown Company with its codefendant.

Without determining whether, in accordance with the broad statement in 2 Street's Fed. Eq. Prac. § 1344, p. 815, the defense of misjoinder of defendants can be made by motion to dismiss, as well as by demurrer, in accordance with the usual practice, I think that the sound rule established by the great weight of authority is, that, in a suit to

abate or restrain a nuisance, as distinguished from an action for damages, all persons maintaining structures or carrying on operations whose effect mingles and combines in contributing to the injury to the plaintiff's property, may be properly joined as defendants, although each transacts his own business separately and independently from the others. The Débris Cases (C. C.) 16 Fed. 25; Warren v. Parkhurst, 186 N. Y. 45, 78 N. E. 579, 6 L. R. A. (N. S.) 1149; Kingsbury v. Flowers, 65 Ala. 479, 39 Am. Rep. 14; People v. Ditch & Min. Co., 66 Cal. 138, 4 Pac. 1152, 56 Am. Rep. 80; Woodyear v. Schaefer, 57 Md. 1, 40 Am. Rep. 419.

In People v. Oakland Water Front Co., 118 Cal. 234, 248, 50 Pac. 305, in which it was held that a demurrer would lie for misjoinder, the structures maintained by the different defendants which it was sought to abate as an obstruction to navigation were not only entirely separate and independently maintained, but had obviously no joint or combined effect upon the navigation, the effect of each being entirely separate and distinct from that of the others.

3. The fact that the Tennessee Copper Company is not suable in this case, over its objection, does not require the dismissal of the suit as to the Ducktown Company.

It is well settled by the weight of authority that when jurisdiction otherwise exists in a Circuit Court in a suit against several defendants, who might be sued either separately or jointly, the right of one of the defendants to object to the local jurisdiction of the court on the ground that it is brought in a district in which neither he nor the plaintiff resides, is a privilege personal to himself, which he alone can raise, and in his behalf only, and that upon the dismissal of the suit, as to him, upon his motion, where he is not an indispensable party to the suit, it will not be dismissed as to the remaining defendants properly before the court. Bensinger Cash Reg. Co. v. National Cash Reg. Co. (C. C.) 42 Fed. 81; Smith v. Atchison, T. & S. F. R. Co. (C. C.) 64 Fed. 1; Dominion National Bank v. Cotton Mills (C. C.) 128 Fed. 181; Schiffer v. Anderson (C. C. A., 8th Circuit) 146 Fed. 457, 76 C. C. A. 667.

And jurisdiction of the suit will likewise be retained when, although one of the defendants is a citizen of the same state with the plaintiff, whose presence would destroy the requisite diversity of citizenship, the suit has been dismissed as to him without prejudice (Smith v. Cotton Oil Co. [C. C. A., 5th Circuit] 86 Fed. 359, 30 C. C. A. 103), or he has neither been served with process nor appeared (Doremas v. Bennett, 4 McLean, 224, 7 Fed. Cas. 916, Fed. Cas. No. 4,001). Nor can a defendant served with process avail himself of a want of jurisdiction as to another person named in the writ who is severed from him and no longer to be considered a defendant in the case. Craig v. Cummings, 2 Wash. C. C. 505, 6 Fed. Cas. 724, Fed. Cas. No. 3,331.

Therefore, since each of the defendants in the present suit might have been sued severally as well as jointly, People v. Ditch & Min. Co., 66 Cal. 138, 4 Pac. 1152, 56 Am. Rep. 80, and under the averments of the bill the Tennessee Copper Company is clearly not an indispensable party to the relief prayed in reference to the nuisance alleged to exist upon the property of the Ducktown Company, the case may, under the

foregoing authorities, be proceeded with against the latter company alone, although dismissed as to the former.

4. The fact, urged in argument, although not set out as one of the grounds of the motion to dismiss, that the plaintiffs, being citizens of New York and West Virginia, have sued two defendants, one of whom is a citizen of New Jersey and the other an alien corporation, does not deprive this court of jurisdiction.

Section 1 of the act of 1875, as amended by section 1 of the act of 1888, confers jurisdiction upon the Circuit Courts in suits "in which there shall be a controversy between citizens of different states * * * or a controversy between citizens of a state and foreign * * * citizens." The plain object of this provision is to confer upon the Circuit Courts jurisdiction of all controversies between citizens of a state and citizens either of another state or a foreign nation in which the requisite jurisdictional amount is involved. And while it may be said from a somewhat metaphysical point of view, that in a suit brought by a citizen of one state against two defendants, one of whom is a citizen of another state, and the other an alien, the controversy, considered in its entirety, is neither wholly between citizens of different states nor between a citizen of a state and a foreign citizen, yet as such controversy in each and all of its elements as between the plaintiff and each of the defendants separately, clearly comes within the provisions of the act, the suit is not, under a just construction of the statute and in view of its plain intent, to be excluded from the jurisdiction of the Circuit Court merely because of the joinder of the two defendants in a single action. To hold otherwise would, I think, be to give the language of the statute a strained and narrow construction, not required by its letter, and defeating its manifest purpose of vesting in the Circuit Courts jurisdiction of controversies between these different classes of persons.

This view is in accordance with the clear weight of authority. In Ballin v. Lehr (C. C.) 24 Fed. 193, and Roberts v. Ry. & Nav. Co. (C. C.) 104 Fed. 577, affirmed in a carefully considered opinion in Roberts v. Ry. & Nav. Co. (9th Circuit) 121 Fed. 785, 58 C. C. A. 61, in each of which the underlying question involved in determining the right of removal to the Circuit Court was whether the entire suit was one of which the Circuit Courts were given jurisdiction by sections 1 of the acts of 1875 and 1888, it was held that a suit brought by a citizen of one state against two defendants, one of whom is a citizen of another state and the other an alien, is a suit of which the Circuit Courts are given jurisdiction and which, as such, is removable to the Circuit Court on petition of the defendants. See, also, Rateau v. Bernard, 3 Blatchf. 242, 20 Fed. Cas. 305, Fed. Cas. No. 11,579.

The case of Tracy v. Morel (C. C.) 88 Fed. 801, in which the statement of a contrary doctrine, appearing in Black's Dillon on the Removal of Causes (section 84, p. 131), which is not, however, found in the earlier editions of Dillon's Removal of Causes, is approved, without discussion, is clearly not supported by the cases of Hervey v. Illinois Mid. Ry. Co., 7 Biss. 103, 12 Fed. Cas. 60, Fed. Cas. No. 6,434, and King v. Cornell, 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60, which are cited as stating the same rule. The Hervey Case involved merely

the obvious proposition that a suit could not be removed under the act of 1875 on the ground of a separate controversy "wholly between citizens of different states" when it appeared that alien parties were also interested in the alleged separate controversy, there being, it is to be noted, no provision in that act for the removal of a suit on the ground of a separate controversy between citizens of a state and aliens; and in King v. Cornell, it was merely held that under the act of 1875 an alien had no right of removal on the ground of a separate controversy.

I therefore conclude, both upon principle and the weight of authority, that a suit brought by a citizen of one state against a citizen of another state and an alien as defendants, involving the requisite jurisdictional amount, is within the jurisdiction of a Circuit Court of the United States.

Furthermore, even if there had been originally a jurisdictional defect by reason of the joinder of the Tennessee Copper Company as a codefendant with the Ducktown Company, this objection would, it seems, be cured under the doctrine of Smith v. Cotton Oil Co., and other cases hereinabove cited, by the dismissal of the suit against the Tennessee Copper Co., leaving in the suit merely a controversy between citizens of New York and West Virginia as complainants and an alien corporation as defendant, of which a Circuit Court has undoubted jurisdiction.

5. The objection to the jurisdiction set out in the motion to dismiss in reference to the amount in controversy, has been cured by the amendments made in the bill.

No other objections being pointed out by the Ducktown Company's motion to dismiss, it results that the motion must be overruled.

An order will accordingly be entered dismissing the suit as to the Tennessee Copper Company in accordance with this opinion, and overruling the motion of the Ducktown Sulphur, Copper & Iron Company.